UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSE ROMAN and GLENA VALDEZ, on behalf of themselves and on behalf of others similarly situated,

Plaintiffs,

-against-

ON INC.,

Defendant.

**MEMORANDUM & ORDER**
**25-CV-06991 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Jose Roman and Glena Valdez (collectively, "Plaintiffs") bring a putative class action against Defendant On Inc. concerning the allegedly misleading labeling of Defendant's athletic footwear. Plaintiffs assert claims for (i) deceptive business practices under New York General Business Law ("N.Y. G.B.L.") § 349; (ii) false advertising under N.Y. G.B.L. § 350; (iii) violations of various state consumer protection statutes; and (iv) unjust enrichment. Defendant has moved to dismiss Plaintiffs' Amended Complaint (Am. Compl. (Dkt. 18)) in its entirety pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) and, alternatively, to strike Plaintiffs' class allegations under Rules 12(f) and 23. (Def.'s Mot. to Dismiss (Dkt. 25); *see also* Mem. of L. in Supp. of Def.'s Mot. to Dismiss ("MTD") (Dkt. 25-1) at 3-5.)

For the reasons stated below, Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

The following facts are taken from the Amended Complaint, which the court accepts as true at this procedural stage. *See Ark.*

*Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

**A. Factual Background**

Defendant On Inc. is an Oregon-based company, incorporated in Delaware, that "creates, markets, and sells" athletic footwear ("the Products"), including the popular "Cloud" series, which features the "Cloud," "Cloudnova," and "The Roger" models. (Am. Compl. ¶¶ 10, 18.) Defendant owns and operates a national chain of retail stores, including stores in New York. (*Id.* ¶¶ 10-11.) Defendant's Products are also sold in other "retail stores such as Foot Locker, REI, Paragon Sports, and Dick's Sporting Goods." (*Id.* ¶ 11.) Plaintiffs are citizens of New York who purchased two pairs of "The Roger" model sneakers—one pair for each Plaintiff—at a Paragon Sports location in New York on or around July 2, 2025. (*Id.* ¶¶ 9, 48.)

Plaintiffs allege that Defendant "prominently" displays the Swiss flag on the exterior heel of the Products. (*Id.* ¶ 21.) The Products also feature the phrase "Swiss Engineering," which is located "directly below or above the Swiss flag." (*Id.* ¶ 22.) Plaintiffs contend that these representations "assur[e] consumers" that the "high price" they are paying for the Products is "justified" by "Swiss labor standards, materials, and manufacturing processes," as opposed to "lower-cost production methods." (*Id.* ¶ 25.)

Plaintiffs allege that, in reality, most of the engineering does not take place in Switzerland. (*Id.* ¶ 30.) Plaintiffs further allege that in "the context of a company making footwear," the term "engineering" is "a broad term that covers everything from the molecular makeup of the soles to the speed of the assembly line." (*Id.* ¶ 28.) Although Defendant's Swiss corporate office provides "some contribution" to the Products' engineering, the Products are not made or assembled in Switzerland, and their primary materials are not sourced from Switzerland. (*Id.* ¶¶ 30, 32.) Instead,

the Products are manufactured "almost exclusively in low-cost labor hubs in Vietnam and Indonesia." (*Id.* ¶ 33.) Because the actual production cost in Vietnam or Indonesia is a fraction of Defendant's "premium 'Swiss' prices," Plaintiffs allege that the Defendant has marked up prices to reflect a "deceptive portrayal of Swiss provenance." (*Id.* ¶ 34.)

Plaintiffs further allege that Defendant is attempting to conceal the true origin of its footwear in some of its models by placing a small "Made in Vietnam" or "Made in Indonesia" tag in an inconspicuous place inside the shoe. (*Id.* ¶ 38.) Plaintiffs contend that this tag is "printed in tiny font that is barely legible across all models" and for some models, part of the shoe must be "forcibly bent and closely inspected." (*Id.* ¶ 39.) For these models, Plaintiffs allege, "the country of origin is only visible at a certain angle, generally by tilting the shoe at 45 to 60 degrees." (*Id.*) Plaintiffs also allege that when consumers view the shoes "on a shelf or in an online gallery," they see the Swiss flag and the "Swiss Engineering" label but "do not see the inner tag." (*Id.* ¶ 45.)

Plaintiffs allege that consumers have left "numerous negative comments" regarding the "overall impression" created by the Products. (*Id.* ¶ 43.) Plaintiffs include several "representative complaints," including comments such as "Swiss washing, with a [S]wiss flag on a made in Vietnam shoe" and "When they put a Swiss logo on their shoe, you expect it to last a long time, They should replace it with a made in [C]hina logo so you expect it to fall apart at least [sic]." (*Id.*) Plaintiffs also allege that consumers "frequently report" that the Products suffer from defects, including a "notorious 'squeaking' defect." (*Id.* ¶ 54.)

Before their purchase, Plaintiffs examined the footwear and noticed a "prominent" red Swiss flag and the phrase "Swiss Engineering" displayed on the exterior heel of the shoes. (*Id.* ¶ 49.) Plaintiffs assert that they relied on the labeling, believing it to mean that the sneakers were made in Switzerland. (*Id.* ¶¶ 50-

51.) Plaintiffs did not observe the "Made in Vietnam" disclaimer, which was "hidden deep inside the shoe." (*Id.* ¶ 52.) Plaintiffs allege that, had they known the sneakers were manufactured in Vietnam, they "would not have purchased them or would have paid significantly less" for them. (*Id.* ¶ 53.)

Plaintiffs further allege that Defendant has sold and continues to sell multiple other models that contain substantially similar misrepresentations. (*Id.* ¶ 59.) These include, but are not limited to: "On Cloud, Cloud 6 Versa, Cloudnova, Cloudrunner, Cloudswift, Cloudmonster, Cloudsurfer, Cloud Sky, Club House, Cloud Horizon, Cloud Waterproof, Cloud Push, Cloud Vista, Cloudgo, Cloudeclipse, Cloud Ultra, and Cloudwander." (*Id.*) Plaintiffs allege that these Products each: (1) display the Swiss flag and "Swiss Engineering" "conspicuously and prominently"; (2) contain no outer label stating that the Products are not manufactured in Switzerland; (3) contain inconspicuous inner-label disclaimers; (4) are manufactured in Indonesia or Vietnam; and (5) result in identical injuries to consumers in the form of price premiums above what the Products would have been worth had Defendant represented and advertised them accurately. (*Id.* ¶ 60.)

Plaintiffs assert claims for violations of N.Y. G.B.L. § 349 and N.Y. G.B.L. § 350, (*id.* ¶¶ 77-97), violations of consumer fraud acts of 20 other states and the District of Columbia, (*id.* ¶¶ 98-110), and a common law claim of unjust enrichment, (*id.* ¶¶ 111-16). Plaintiffs seek class certification, monetary damages with interest, injunctive relief enjoining Defendant from "continuing the deceptive practices," and attorneys' fees. (*Id.* ¶ 117.)

## B. Procedural History

On December 19, 2025, Plaintiffs commenced this action on behalf of themselves as well as two proposed classes. (Compl. (Dkt. 1) ¶¶ 6, 45, 46.) The first proposed class is for the N.Y. G.B.L. § 349 and § 350 claims and consists of persons "in" New York who

purchased one or more of the Products (the "New York Class"). (*Id.* ¶ 45; Am. Compl. ¶ 61.) The second proposed class is for the state consumer fraud statutes and consists of persons "in" any one of the 20 listed states or the District of Columbia who purchased one or more of the Products ("the Multi-State Class"). (Compl. ¶ 46; Am. Compl. ¶ 62.)

On February 18, 2026, Defendant requested a pre-motion conference regarding its anticipated motion to dismiss the Complaint in its entirety with prejudice or, alternatively, to strike the class allegations. (Def.'s Letter Dated 2/18/2026 (Dkt. 16) at 1.) On February 20, 2026, Plaintiffs advised the court of their intent to file their Amended Complaint and moved to hold the pre-motion conference in abeyance to allow them sufficient time to do so. (Pls.' Letter Dated 2/20/2026 (Dkt. 17) at 1.) The court granted this request. (Text Order Dated 2/20/2026.) Plaintiffs filed their Amended Complaint on March 12, 2026. (*See generally* Am. Compl.)

On July 20, 2026, Defendant filed their fully briefed motion to: (1) dismiss Plaintiffs' Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6); or, alternatively, (2) strike Plaintiffs' class allegations under Rules 12(f) and 23. (MTD; Pls.' Opp'n to MTD ("Opp.") (Dkt. 26); Def.'s Reply in Supp. of MTD ("Reply") (Dkt. 27).) Defendant also filed a request for judicial notice of certain facts and documents in support of its motion. (Def.'s Req. for Jud. Not. (Dkt. 25-3).)

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true" and "draw all reasonable inferences" in the plaintiff's favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The court will not assume the truth of legal conclusions that stand alone unless they are "supported by factual allegations" that "plausibly give rise to an entitlement to relief," which is a "context-specific" determination requiring the court to apply its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

On a motion to dismiss, "[c]ourts may take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (quoting Federal Rule of Evidence 201(b)(2)). Where a defendant requests that the court take judicial notice of websites, the court may take judicial notice of "the *existence* of the websites . . . but it may not assume the *truth* of the facts therein." *Chiew v. TD Bank, N.A.*, No. 24-CV-7566 (PKC) (JRC), 2026 WL 673280, at *5 (E.D.N.Y. Mar. 10, 2026) (emphasis in original).

## B. Discussion

### 1. Defendant's Request for Judicial Notice

Defendant requests that the court take judicial notice of various websites, which, in relevant part, contain information about Defendant's manufacturing and design practices, as well as the practices of other shoe companies. (MTD at 9, 15; Def.'s Req. for Jud. Not.) The court denies this request, because Defendant relies on its website excerpts to impermissibly challenge the

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

veracity of Plaintiffs' allegations. *See Casio v. Vineyard Vines, LLC*, No. 19-CV-5135 (JMA) (AYS), 2021 WL 466039, at *5 (E.D.N.Y. Feb. 9, 2021) (noting that "[e]ven if the [c]ourt took judicial notice of the website excerpts, they could not be used" for the purpose of proving the truth of the defendant's contentions). In any event, Defendant insists that the court "need not consider the exhibits because the [Amended Complaint] fails on its own allegations and incorporated photographs." (Reply at 10.)

2. Plaintiffs' N.Y. G.B.L. Claims

Plaintiffs claim that Defendant's conduct in connection with the sales of athletic footwear violates N.Y. G.B.L. §§ 349 and 350. (Am. Compl. ¶¶ 77-97.) In response, Defendant argues that Plaintiffs' claims fail to satisfy the elements of a claim under either of the statutes. For the reasons that follow, the court grants Defendant's motion to dismiss Plaintiffs' N.Y. G.B.L. §§ 349 and 350 claims.

N.Y. G.B.L. § 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]." N.Y. Gen. Bus. Law § 349(a). Similarly, § 350 proscribes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]." *Id.* § 350.

"To successfully assert a claim under either [N.Y. G.B.L. §§ 349 or 350], 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*,

18 N.Y.3d 940, 941 (N.Y. 2012)).[2] "A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances."[3] *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-CV-2986, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (N.Y. 2021)). It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiffs assert that a reasonable consumer would reasonably interpret Defendant's usage of the Swiss flag in tandem with the phrase "Swiss Engineering" to indicate that the Products are "made, manufactured, produced or sourced in Switzerland." (Opp. at 6; *see* Am. Compl. ¶¶ 3, 24.) Specifically, Plaintiffs contend that (1) reasonable consumers would interpret the presence of a national flag as a claim that a product is "sourced, produced, or substantially manufactured" in Switzerland, (Am. Compl. ¶ 20), and (2) "engineering" is a term that should be read broadly in the context of footwear manufacturing as encompassing "everything from the molecular makeup of the soles to the speed of

---

[2] The parties do not dispute that the Amended Complaint plausibly pleads allegations of consumer-oriented conduct. *See Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020) (explaining that a plaintiff must "demonstrate that the [defendant's] acts or practices have a broader impact on consumers at large"). Defendant's motion to dismiss Plaintiffs' N.Y. G.B.L. claims instead focuses on the second and third elements.

[3] The "reasonable consumer" standard for both sections is substantively identical. *Housey v. Procter & Gamble Co.*, No. 21-CV-2286 (NRB), 2022 WL 874731, at *2 (S.D.N.Y. Mar. 24, 2022), *aff'd* No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022). "False advertising" is defined by the N.Y. G.B.L. as "advertising, including labeling" that is "misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The parties do not contest that the Swiss flag and "Swiss Engineering" representations on the Products are a form of advertising.

the assembly line" because manufacturing modern footwear requires the coordinated application of multiple distinct types of engineering, (*id.* ¶¶ 28-29; Opp. at 8.) Thus, Plaintiffs argue that the Swiss flag and "Swiss Engineering" representations are misleading because the Products are not actually "made," "assembled," or "source[d]" in Switzerland. (*Id.* ¶ 32.) Furthermore, Plaintiffs argue that under *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), the country-of-origin disclaimers do not cure the misleading impressions created by the labeling on the exterior of the Products, especially because the disclaimers are inconspicuous. (Opp. at 10-12; *see* Am. Compl. ¶¶ 4, 38-39, 52, 60.)

Defendant asserts that the phrase "Swiss Engineering" is not misleading because the term "engineering" does not reasonably entail sourcing or manufacturing and Plaintiffs' characterization of the term is idiosyncratic. (MTD at 9-10.) Defendant argues that it never represented that the Products are sourced or manufactured in Switzerland. (*Id.* at 9; Reply at 6.) Further, Defendant argues that, since Plaintiffs concede that there is "some contribution from Defendant's corporate office located in Switzerland," (Am. Compl. ¶ 30), the phrase "Swiss Engineering" is accurate rather than misleading. (Reply at 5.) Alternatively, Defendant contends that even if the labeling presents ambiguity regarding where the shoes are made, the country-of-origin disclaimers located inside the Products "definitively [dispel] it." (MTD at 9; *see* Reply at 6.)

*a. The Framework Plaintiffs Invoke Does Not Necessarily Control the Case*

Plaintiffs rely on *Mantikas* to argue that Defendant's allegedly misleading representations "on the front" of its Products "cannot be cured by" the country-of-origin disclosures contained within the shoes. (Am. Compl. ¶ 44; Opp. at 10-12.)

*Mantikas* concerned several Cheez-Its boxes with the phrase "Whole Grain" or "Made with Whole Grain" printed in large font on the front of the packaging. 910 F.3d at 634. The Second Circuit found that these labels falsely implied that the grain ingredient was predominantly whole grain, when in reality it was predominantly enriched white flour. *Id.* at 637. The court reasoned that reasonable consumers "are likely to understand that crackers are typically made predominantly of grain," and they "look to the bold assertions on the packaging to discern what *type* of grain." *Id.* at 638. Accordingly, the statement "made with whole grain" plausibly communicated to a reasonable consumer that the grain ingredient was entirely or predominantly whole grain, *id.*, and the misleading quality of this representation was not cured by the ingredient list because "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box," *id.* at 637.

At the outset, there exists considerable doubt in this Circuit as to whether *Mantikas* applies to cases involving misleading statements about a product's place of origin. *See Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) (noting that "*Mantikas* does not suggest that its reasoning necessarily applies outside the context of nutritional labels" and distinguishing *Mantikas*'s reasoning "even if [*Mantikas*] applied to some place-of-origin advertising"); *La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-CV-1575, 2025 WL 841687, at *2 (2d Cir. Mar. 18, 2025) (citing *Hardy*); *Bates v. Abbott Lab'ys*, No. 24-CV-919, 2025 WL 65668, at *3 (2d Cir. Jan. 10, 2025) (same); *Brockington v. Dollar Gen. Corp.*, 695 F. Supp. 3d 487, 507 n.4 (S.D.N.Y. 2023) (explaining that *Hardy* "sought to clarify the reach of *Mantikas*"); *Newman v. Bayer Corp.*, 695 F. Supp. 3d 469, 480 (S.D.N.Y. 2023) (characterizing *Mantikas* as "controlling precedent governing '*predominant' ingredient* claims" (emphasis added)).

Nevertheless, assuming that *Mantikas* does apply, courts in this Circuit have routinely interpreted *Mantikas* as "drawing a distinction between false and ambiguous representations, the latter of which can be cured by an accurate, clarifying disclaimer." *Henry v. Nissin Foods (U.S.A.) Co. Inc.*, No. 22-CV-363 (NGG) (RER), 2023 WL 2562214, at *7 (E.D.N.Y. Mar. 17, 2023); *see Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 560 (E.D.N.Y. 2023) ("Since *Mantikas*, district courts within the Second Circuit have continued to recognize that clarification can defeat a claim that a defendant's advertisement is deceptive if the plaintiff challenges an ambiguous representation made in the advertisement but have held that clarification cannot correct an *unambiguously* misleading representation." (emphasis in original)); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886 (EK) (PK), 2021 WL 4502439, at *4 (E.D.N.Y. Sep. 30, 2021) (observing a "spectrum of advertising claims from factual claims that are absolutely true," to "ambiguous claims, to misleading claims, to claims that are outright false," with *Mantikas* addressing only the "latter end of that spectrum . . . to say that contextual information on the reverse of a product's packaging cannot overcome bold and blatant misstatements on the front"); *cf. Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024) ("[W]hen a statement is ambiguous, every reasonable shopper knows the devil is in the details and thus would seek clarification elsewhere on the package."); *McCabe v. Sunbeam Prods., Inc.*, No. 24-CV-5510 (EK) (JAM), 2025 WL 2822500, at *5 (E.D.N.Y. Oct. 3, 2025) (considering a disclaimer in light of ambiguity surrounding the meaning of the word "cup"). The court adopts the same approach in this case.

*b. "Swiss Engineering" Is Ambiguous*

Representations are ambiguous when they "could be read to have multiple meanings." *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022). For the reasons stated below,

the court finds that the phrase "Swiss Engineering" is ambiguous, rather than misleading.

Plaintiffs assert that the term "engineering" encompasses "everything from the molecular makeup of the soles to the speed of the assembly line" in the context of complex footwear manufacturing. (Am. Compl. ¶¶ 28-29; Opp. at 7-8.) But the court does not assume based on this that the reasonable consumer would interpret "engineering" to refer to all stages of sourcing, processing, and manufacturing. The question of "[w]hether or not a reasonable consumer would be misled by the allegedly deceptive packaging is a question of law that can be decided by a court at motion to dismiss." *Henry*, 2023 WL 2562214 at *4; *see Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (stating that allegations about how a reasonable consumer would interpret a label "are conclusory statements that the [c]ourt is not required to accept [on a motion to dismiss]"). Therefore, the court does not accept Plaintiffs' bare allegations that "Swiss Engineering" would necessarily mislead a reasonable consumer, because these operate as legal conclusions. (*See, e.g.*, Am Compl. ¶ 31, Opp. at 9).[4]

The court finds that the term "engineering" is susceptible to other meanings than the absolute, all-stages-of-the-process version that Plaintiffs offer. Merriam-Webster defines "engineering," *inter*

---

[4] Plaintiffs rely on *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) for the proposition that the court is not free to reject a plaintiff's reasonable interpretation "simply because" there is an alternative, non-misleading interpretation. As stated, the court is not outright rejecting Plaintiffs' interpretation of "Swiss Engineering" and dismissing the claim simply because there exists an alternative interpretation. Rather, the court looks at the alleged misrepresentation in its full context. *See Fink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial . . . under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

*alia*, as "the design and manufacture of complex products." *Engineering, Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/engineering [https://perma.cc/3MMN-BWTV] (last visited Nov. 19, 2026). This definition might be read to support Plaintiffs' proposed definition, if "design" and "manufacture" are read as individually necessary components of the term's meaning. But "engineering" also functions as the present participle of the verb "engineer," *id.*, for which Merriam-Webster offers definitions including "to contrive or plan out usually with more or less subtle skill and craft" and "to guide the course of." *Engineer, Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/engineer [https://perma.cc/3PY5-R5TG] (last visited Nov. 19, 2026). Planning out or guiding the course of a product could be understood as activities in a pre-manufacturing "design" stage, contrary to Plaintiffs' position that "engineering" necessarily refers to manufacturing activities.

Indeed, Plaintiffs' own submissions confirm that the phrase "Swiss Engineering" is ambiguous. *Cf. Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 96 (S.D.N.Y. 2021) (noting that a plaintiff's original and amended complaint advanced two distinct interpretations of "All Butter"). As stated, the Amended Complaint characterizes the term "engineering" as covering "everything from the molecular makeup of the shoes to the speed of the assembly line." (Am. Compl. ¶ 28.) Elsewhere in the Amended Complaint, however, Plaintiffs characterize the phrase "Swiss Engineering" as describing "only part of the manufacturing process." (Am. Compl. ¶ 41.) Furthermore, Plaintiffs' Opposition notes (without necessarily adopting) the possibility that design "can be considered engineering." (Opp. at 8 n.4.) The Opposition further concedes that "'Swiss Engineering' may not literally mean that the shoes were manufactured in Switzerland," and describes engineering as "a single step" in the manufacturing

process—a description that directly conflicts with Plaintiffs' proposed definition, in which "engineering" *contains* the stage of manufacturing. (*Id.* at 2, 17.)

Additionally, Plaintiffs' references to negative comments on the internet regarding the "overall impression created by On [s]hoes" are unavailing. (Am. Compl. ¶ 43.) As an initial matter, comments gathered from the internet do not constitute marshalled consumer survey data that would support Plaintiffs' allegations that reasonable consumers would interpret "Swiss Engineering" as making a claim regarding the Products' place of origin. *Cf. Duncan v. Kahala Franchising, L.L.C.*, 732 F. Supp. 3d 255, 266 (E.D.N.Y. 2024) (crediting a consumer survey that employed open-ended questioning and yielded compelling results). And to the extent that the internet comments refer to Defendant's labeling, they refer primarily to impressions created by Defendant's usage of the Swiss flag. (Am. Compl. ¶ 43.) The comments also critique the Products' squeakiness and lack of durability—defects that Plaintiffs do not allege beyond those comments. (*Id.* ¶¶ 43, 54.) Accordingly, Plaintiffs have not provided an empirical basis to justify their reading of "Swiss Engineering."

The meaning of the term "engineering" is thus ambiguous, as demonstrated by dictionary definitions and as reflected in Plaintiffs' own submissions. The court therefore finds that a reasonable consumer would not assume that the "Swiss Engineering" representation, in combination with the Swiss flag, indicates that the Products are "manufactured, or at least substantially produced, in Switzerland." (*Id.* ¶ 24.) Instead, a reasonable consumer would examine the product to determine if a disclaimer dispels the ambiguity.

c. *Defendant's Disclaimer Statements Effectively Dispel the Ambiguity*

Since the meaning of the "Swiss Engineering" representation is ambiguous, the court must evaluate it in conjunction with the

country-of-origin disclaimers and ask whether the disclaimers resolve the ambiguity. *See Engram*, 2021 WL 4502439, at *3 ("[W]hen the front of the package is better characterized as ambiguous than misleading, courts [look] at the alleged misrepresentations in their full context."); *see also Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-CV-285, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) ("[A]ssuming that the representation on the front label might be considered ambiguous, the additional information on the [product's] back label provides clarifying language that definitively dispels any arguable ambiguity on the front.").

For the reasons that follow, the court finds that Defendant's disclaimer statements effectively dispel the ambiguity surrounding the phrase "Swiss Engineering."

Plaintiffs characterize the disclaimer statements as "inconsistent" and "misleading" in light of the "Swiss Engineering" representation. (Am. Compl. ¶ 41; *see* Opp. at 15.) Viewed together, Plaintiffs contend, "Swiss Engineering" and the country-of-origin disclaimers are "contradictory" and "confusing." (Opp. at 15; *see* Am. Compl. ¶ 41.) The court disagrees. The country-of-origin disclaimers unambiguously reveal the Products' places of origin—Vietnam and Indonesia. (*See* Am. Compl. ¶¶ 38-41.) Unlike in *Mantikas*, the disclaimer itself is not misleading. *See* 910 F.3d at 637 (finding that disclaimers on a box of crackers were misleading because the disclaimers "falsely imply that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion"). And as discussed above, "Swiss Engineering" can be reasonably interpreted as embodying design principles. *See supra* Section II.B.2.b. This reading does not conflict with a clear, unambiguous statement about where the Products were manufactured. *See Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec.

11, 2023) (finding no contradiction between representations on the front label of a product and "clarifying information" located on the back label because the plaintiffs failed to allege that the representations on the front were misleading); *cf. Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 103 (E.D.N.Y. 2020) (observing that a "Natural and Artificially Flavored" disclosure on a beverage label was ambiguous because it did not refer to a specific ingredient).

But this is not the end of the inquiry. Courts look to contextual factors in evaluating the effectiveness of a disclaimer, such as "the font size, placement of, and emphasis on" the disclaimer. *Henry v. Campbell Soup Co.*, No. 22-CV-431 (LDH) (PK), 2023 WL 2734778, at *3 (E.D.N.Y. Mar. 31, 2023).

Citing to a number of out-of-circuit cases, Plaintiffs urge the court to reject the efficacy of the disclaimers because they are printed in "tiny font that is barely legible across all models" and "[s]ome models require the shoe to be forcibly bent" for "close inspection." (Opp. at 12; *see* Am. Compl. ¶ 39.) Plaintiffs further argue that the country-of-origin labels are "inconspicuously located inside the shoe below the ankle area or on the inner tongue." (Opp. at 12; *see* Am. Compl. ¶¶ 38, 102.)

Defendant maintains that the country-of-origin disclaimers appear on the same interior tag that consumers "routinely inspect" when determining shoe size, and are therefore located on "one of the most conspicuous and commonly viewed locations on the shoe." (MTD at 14; *see also* Reply at 6.) Defendant also points out

that the Amended Complaint displays the "Made in Vietnam" disclaimer "immediately beneath" the phrase "Swiss Engineering" on the same tag. (Reply at 6.) [5]

The court finds that the formatting factors militate in favor of the Defendant. Assuming as true Plaintiffs' allegations that the country-of-origin disclaimers are printed in "tiny font," that alone is not dispositive. *See Campbell Soup Co.*, 2023 WL 2734778, at *6 ("In light of the Clarifying Language being in all caps, bolded, and in a contrasting color, font size is not enough to undermine the effect of the disclaimer."); *Montgomery v. Stanley Black & Decker, Inc.*, No. 23-CV-735, 2024 WL 939151, at *2 (2d Cir. Mar. 5, 2024) ("[F]ine print may clarify an ambiguous label on packaging."). And although Plaintiffs allege that "some models require

---

[5] Defendant also contends that this court should consider Plaintiffs' initial Complaint, which alleges that competitors place country-of-origin disclaimers in "immediately accessible" locations, such as underneath the tongue of the shoes. (MTD at 1-2, 2 n.1; Compl. ¶ 32.) Under Fed. R. Civ. P. 12(b)(6), the court will only consider "the contents of the *operative* complaint and documents attached to it or incorporated into it by reference." *McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) (emphasis added). As such, an allegation in a superseded complaint "ceases to be a conclusive judicial admission, even as it may remain competent evidence for submission to the factfinder." *Oberlander v. Coinbase Glob. Inc.*, No. 23-CV-184, 2024 WL 1478773, at *3 (2d Cir. Apr. 5, 2024). This remains true "even where an amended pleading is inconsistent with the original." *Id.*

In this case, Plaintiffs' initial Complaint characterized a tag located in the tongue of a shoe as "immediately accessible," but the Amended Complaint omits this characterization. (*Compare* (Compl. ¶ 32) *with* (Am. Compl. ¶¶ 39-40.) Accordingly, the court will not consider the prior allegations contained in the initial Complaint. Defendant cites *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sep. 24, 2008) for the proposition that the court may accept the allegations in the Plaintiffs' initial Complaint as true because "Plaintiffs changed their statement of facts in response to defenses" raised by Defendant. (MTD at 2 n.1.) But *Colliton* is inapposite because that case involved a plaintiff who made "[s]elf-contradictory assertions without legal or factual support." 2008 WL 4386764, at *13.

part of the shoe to be forcibly bent and closely inspected" in order to read the country-of-origin disclaimers, (Am. Compl. ¶ 39), the disclaimers appear to be in "contrasting, visible font." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017); (*see* Am. Compl. ¶ 39).

Furthermore, the country-of-origin disclaimers do not appear to be embedded within dense text, such that it would be difficult for the consumer to find them. *See McCabe*, 2025 WL 2822500, at *5 ("This is not stereotypical fine print, and the consumer was not required to read multiple paragraphs of boilerplate."); (*see* Am. Compl. ¶ 39). Moreover, the placement of the country-of-origin disclaimer on the interior tag beneath the phrase "Swiss Engineering" weighs in Defendant's favor. As discussed above, a reasonable customer would find the meaning of the phrase "Swiss Engineering" located on the outside of the shoe to be ambiguous, and would look for further information to dispel the ambiguity. *See supra* Section II.B.2.b. On the inside of the shoe, that customer would find the disclaimer tag, with the same ambiguous phrase just above a clear statement that the product is "Made in Vietnam" or "Made in Indonesia." (Am. Compl. ¶¶ 38-39); *see Nissin Foods*, 2023 WL 2562214, at *6 (highlighting the fact that a disclaimer was in close proximity to the representation at issue).

Plaintiffs rely on *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014), an out-of-circuit authority, for the proposition that "a national flag combined with a geographic association suffices to create a plausible misleading impression of product origin." (*See* Opp. at 7.) Plaintiffs' reliance is misplaced. *Marty* involved a beer label stating that the product "Originated in Germany," a clear claim as to the product's sourcing. Here, "Swiss Engineering" does not clearly make a claim about the

sourcing of the Products.[6] Additionally, the country-of-origin disclaimers in this case are not obstructed by exterior packaging, as was the case in *Marty*. *See* 43 F. Supp. 3d at 1341 (noting that a consumer "would have to either open the cartons of twelve-pack bottles and twelve-pack cans or lift the bottle from the six-pack carton" in order to view the country-of-origin disclaimer on the products); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017) (distinguishing *Marty* on similar grounds). Further, the court in *Marty* found that the disclaimer was "difficult to read" because it was printed "in a white font against a shiny, metallic silver background." 43 F. Supp. 3d at 1341. In this case, Plaintiffs do not allege that the country-of-origin disclaimers' font does not contrast with its background.

Plaintiffs' reliance on *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1 (D. Mass. 2022) and *Seaman v. This is L., Inc.*, No. 24-CV-3524 (ARR) (JAM), 2024 WL 4449405 (E.D.N.Y. Oct. 2, 2024) is similarly misguided. The footwear in *Cristostomo* prominently featured the phrase "Made in the USA" and included a disclaimer, located elsewhere, that the shoes contain a "domestic value of 70% or greater." 647 F. Supp. 3d at 4-5. There, the court found that the disclaimer had multiple reasonable interpretations and therefore could not conclude that "a reasonable consumer would understand this disclaimer." *Id.* at 9. Similarly, the products at issue in *Seaman* contained the statement "NO . . . CHLORINE BLEACHING [or] DYES" and featured an ingredient

[6] *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022), cited by the Plaintiffs for the same proposition, (*see* Opp. at 6-7), is materially distinguishable for the same reason. In that case, the court determined that the statement "ITALY'S #1 BRAND OF PASTA" was plausibly misleading, especially in light of an alleged marketing campaign that highlighted the company's Italian identity. *Sinatro*, 635 F. Supp. 3d at 878-79. Since the challenged representation was plausibly misleading, the court declined to consider the defendant's country-of-origin disclaimer. *Id.* at 879 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

list on the reverse which included the term "titanium dioxide" next to the words "makes material look white, naturally occurring." 2024 WL 4449405 at *1-2. The court found that the disclaimer was misleading because a reasonable consumer could understand it to mean that titanium dioxide naturally occurs in other ingredients, thereby reinforcing the consumer's false impression that the product did not contain artificial color agents. *Id.* By contrast, the disclaimers in this case are not ambiguous or misleading. *Cf. Campbell Soup Co.*, 2023 WL 2734778 at *4-5 (distinguishing cases involving a "broad representation coupled with an overly narrow disclaimer" from a case involving a "narrow" representation and a "clear" disclaimer). For these reasons, the court concludes that the country-of-origin disclaimers effectively dispel the ambiguity surrounding the phrase "Swiss Engineering."

*d. Defendant's Usage of the Swiss Cross Is Not Misleading*

Finally, Plaintiffs contend that the "prominently display[ed]" Swiss flag represents "an immediate and unambiguous net impression: This is a Swiss product." (Am. Compl. ¶¶ 21, 23.) The court disagrees. *Nelson v. MillerCoors, LLC* is illustrative here. In that case, the plaintiff alleged that the defendant, a beverage company, misled consumers to believe that they were purchasing Australian beer when, in reality, they were purchasing beer brewed in the United States. *Nelson*, 246 F. Supp. 3d at 671. The beer can labels at issue sported "multiple references to Australian culture and symbols, namely an image of a Red Kangaroo, the national symbol of Australia, and the Southern Cross constellation, which is a main component on the Australian national flag." *Id.* at 670. The court considered the labels in conjunction with an explicit disclaimer located elsewhere on the cans and concluded that the references to Australia were "eclipsed by the accurate disclosure statement." *Id.* at 676.

The same reasoning applies here. Plaintiffs do not deny that the Products' references to the Swiss cross are accompanied by country-of-origin disclaimers. (Am. Compl. ¶¶ 38, 40.) And contrary to Plaintiffs' argument, the court finds that the representation of the Swiss flag does not unambiguously communicate that the Products were sourced or manufactured in Switzerland. Because the court has found the country-of-origin disclaimer to be effective, it eclipses the challenged representations.

Accordingly, because the court finds that Defendant's disclaimers effectively dispel the ambiguity surrounding the Products' place of origin, the court GRANTS Defendant's Motion to Dismiss as to the N.Y. G.B.L. §§ 349 and 350 claims.

3. Plaintiffs' Unjust Enrichment Claim

Plaintiffs also bring an unjust enrichment claim against Defendant. (Am. Compl. ¶¶ 111-16.) Plaintiffs contend that Defendant "knowingly and willingly" accepted "[s]ubstantial benefits" from Plaintiffs and the proposed classes in the form of payments for the Products, and Defendant "knew or should have known" that these payments were made "with the expectation that [the Products] would be as represented." (*Id.* ¶¶ 112-13.) As such, Plaintiffs argue that "Defendant's retention of these benefits is inequitable" and request "an accounting, restitution, attorneys' fees, costs and interest." (*Id.* ¶¶ 114, 116.)

Defendant argues that Plaintiffs' unjust enrichment claim is duplicative of their statutory claims because their unjust enrichment claim "rests on the same facts and seeks the same relief" as their statutory claims. (MTD at 19.) Plaintiffs respond that courts in this district "routinely decline to dismiss unjust enrichment claims at the pleading stage even when they are asserted alongside [N.Y. G.B.L.] claims." (Opp. at 20.) Furthermore, Plaintiffs contend that N.Y. G.B.L. claims rest on different elements than unjust enrichment claims do, provide for different forms of relief, and are governed by different statutes of limitations. (*Id.* at 21.)

The court agrees with Defendant. It is well established that an unjust enrichment claim is "not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *see also Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) ("[A]n unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."); *Nelson*, 246 F. Supp. 3d at 679 (dismissing plaintiff's unjust enrichment claim which "relie[d] on the same facts as his other causes of action"). Plaintiffs have not alleged any additional facts that would support an independent theory of unjust enrichment. *See Del Rosario v. Sazerac Co., Inc.*, No. 23-CV-1060 (AS), 2023 WL 6318083, at *3 (S.D.N.Y. Sep. 28, 2023) (noting that a plaintiff identified no grounds upon which defendant's enrichment could be considered unjust other than the fact that the defendant engaged in deceptive practices or false advertising, and the plaintiff did not establish how she could fail on those claims but prevail on her unjust enrichment claim)

Indeed, district courts in this Circuit have consistently dismissed unjust enrichment claims on this basis notwithstanding the fact that the claims require different elements to be met. *See, e.g., Ripa v. Unilever U.S. Inc.*, No. 25-CV-10028 (CM), 2026 WL 811180, at *12 (S.D.N.Y. Mar. 23, 2026) (dismissing plaintiff's unjust enrichment claim despite plaintiff's argument that the elements of the claim were distinct from those of her consumer protection claims, because plaintiff's "unjust enrichment claim is nothing more than a repackaging of her [other] claims"); *Vaglica v. Reckitt Benckiser LLC*, 699 F. Supp. 3d 200, 206, 212 (E.D.N.Y. 2023) (dismissing plaintiff's unjust enrichment claim as duplicative of his N.Y. G.B.L. claims); *Warren v. Whole Foods Mkt. Grp.*,

*Inc.*, 574 F. Supp. 3d 102, 111, 120 (E.D.N.Y. 2021) (same).[7] Similarly, Plaintiffs' argument that the "forms of recovery" are different between their statutory claims and their unjust enrichment claim is of no avail, because an "unjust enrichment claim is duplicative if it relies on the same conduct that forms the basis of the plaintiff's other claims." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023). Plaintiffs' statute of limitations argument fares no better, because a "plaintiff cannot escape the statute of limitations applicable to his statutory claims by recasting those claims under an unjust enrichment theory." *Nachman v. Tesla, Inc.*, No. 22-CV-5976 (RPK) (ST), 2023 WL 6385772, at *5 (E.D.N.Y. Sep. 30, 2023) (citing *Corsello*, 967 N.E.2d at 1184-85), *aff'd*, No. 24-2362, 2025 WL 1201996 (2d Cir. Apr. 25, 2025).

The court therefore GRANTS Defendant's Motion to Dismiss as to the unjust enrichment claim.[8]

---

[7] The cases Plaintiffs invoke for the contrary view primarily rely on *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020). *See* Opp. at 20-21; *Seaman*, 2024 WL 4449405 at *6 (quoting *Axon*); *Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 432 (E.D.N.Y. 2024) (same); *Scholder v. Sioux Honey Ass'n Coop.*, No. 16-CV-5369 (GRB), 2022 WL 125742, at *6 (E.D.N.Y. Jan. 13, 2022) (same). But *Axon* stated "that a plaintiff may plead unjust enrichment "in the alternative to a *breach of warranty* claim," which is distinct from a claim under N.Y. G.B.L. §§ 349 or 350. 813 F. App'x at 706 (emphasis added). In any event, the plaintiff's unjust enrichment claim in *Axon* failed for a similar reason that Plaintiffs' claim does today: "that she has not alleged a fraud that would render [the defendant's] enrichment unjust." *Id.*

[8] Although the Amended Complaint may be read as pleading unjust enrichment claims under the jurisdictions of the Multi-State Class, the court does not address those claims. (*See* Am. Compl. ¶ 116 (alleging that, as a result of Defendant's "wrongful conduct and unjust enrichment," Plaintiffs "*and the Class*" are entitled to relief (emphasis added)); *see also id.* ¶ 63 ("The New York Class and the Multi-State Class are referred to herein as the Class.").) Under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, a federal court

4. Plaintiffs' Other State Consumer Protection Claims

Plaintiffs also allege violations of other state consumer protection statutes on behalf of themselves and the Multi-State Class. (Am. Compl. ¶¶ 98-110.) "Because all of Plaintiff's individual claims are dismissed, the Court lacks jurisdiction over the putative class claims, which allege violations of various state consumer protection laws." *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 364-65 (S.D.N.Y. Nov. 14, 2022) (collecting cases).

The court therefore GRANTS Defendant's Motion to Dismiss as to the other state consumer protection claims.

---

sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state. *See* 313 U.S. 487, 496 (1941) (holding "that the prohibition declared in *Erie Railroad v. Tompkins*, 304 U.S. 64 [(1938)], against such independent determinations by the federal courts extends to the field of conflict of laws."). As a federal court sitting in diversity jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), this court applies the choice-of-law rules of the state in which it sits—here, the State of New York. *See id.*; *Brower v. Colgate-Palmolive Co.*, No. 25-CV-3348 (JPO), 2026 WL 1831253, at *13 (S.D.N.Y. June 25, 2026). "Under New York choice-of-law rules, where the parties agree that a certain jurisdiction's law controls, this is sufficient to establish choice of law." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016). This includes cases where "[t]he parties' briefs assume that New York law controls," thereby providing "implied consent" to the application of New York law. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). Here, both parties apply only New York law in the sections of their briefs discussing the unjust enrichment claim, (*see* MTD at 19; Opp. at 20-21; Reply at 8), and accordingly, only New York law applies to Plaintiffs' unjust enrichment claims. *See Wyse v. Metro. Com. Bank*, No. 24-CV-9108 (PAE), 2025 WL 2208161, at *26 n.24 (S.D.N.Y. Aug. 4, 2025) (applying New York law to an unjust enrichment claim where the parties had "cited New York law" in their briefs and neither party had "argued that such differs from that of other states"), *aff'd sub nom. Wyse v. Metro. Com. Bank*, No. 25-2106, 2026 WL 3033660 (2d Cir. Oct. 9, 2026).

5. Leave to Amend

Plaintiffs' Opposition includes a request for leave to file a second amended complaint under Fed. R. Civ. P. 15(a)(2). (Opp. at 25.) Defendant opposes the request. (Reply at 10.)

Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this is a permissive standard, "a plaintiff need not be given leave to amend if he fails to specify . . . to the district court . . . how amendment would cure the pleading deficiencies in his complaint." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022). Accordingly, because Plaintiffs have not indicated how any attempt to re-plead would not be futile, (*see* Opp. at 25), the court DENIES their request for leave to amend.[9]

## III. CONCLUSION

In sum, the court GRANTS Defendant's Motion to Dismiss the Amended Complaint in its entirety. Plaintiffs' claims are DISMISSED WITH PREJUDICE. Plaintiffs' request for leave to file a second amended complaint is DENIED. The Clerk of Court is respectfully DIRECTED to close the case.

SO ORDERED.

Dated: Brooklyn, New York
November 23, 2026

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

[9] Defendant's alternative motion to strike, (MTD at 19-24), is denied as moot in light of the court's dismissal of the Amended Complaint in its entirety. *See Judkins v. Brooklyn Hosp. Ctr.*, No. 20-CV-6222 (LDH) (MMH), 2023 WL 2652279, at *3 n.5 (E.D.N.Y. Mar. 27, 2023).